# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

JOHNNY A. McDONALD                                                                                 PLAINTIFF

v.                                        CIVIL ACTION NO. 5:18-CV-P93-TBR

MICHAEL SPRINGFIELD et al.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Johnny A. McDonald filed a complaint (DN 1) regarding events occurring in the Kentucky State Penitentiary (KSP) in October 2017. The Court must perform an initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). However, since filing his complaint, Plaintiff has filed a number of motions, which must be addressed before initial review.

### *Allegations of the complaint*

The complaint names as Defendants the following KSP employees: Corrections Officers Michael Springfield, Michael Pillion, and Tammie Dornelle; Lt. Jared Thompson; Sergeant Brendan Inglish; and Warden Randy White. Plaintiff also names as a Defendant Deputy Commissioner James L. Erwin of the Kentucky Department of Corrections (KDOC). All Defendants are sued in their individual and official capacities.

Plaintiff alleges that, while housed at KSP in 2013, Defendant Dornelle and other KSP employees were overheard "plotting to 'kill' me and cover up my death like so many deaths has been done." Apparently, Plaintiff was transferred away from KSP because of that threat. However, in October 2017, Plaintiff was returned to KSP, where Defendant Dornelle still works.

Plaintiff states that he attempted to resolve the situation by talking to Defendant Dornelle, but she insisted that she would "'finish what she started.'"

Plaintiff alleges that on October 17, 2017, a random search of his cell signaled to Plaintiff that "it has begun, 'meaning they were going to try to kill him.'" He asserts that Defendant Pillion noticed Plaintiff had dreadlocks during this search; that he and non-Defendant Unit Administrator Julie Roberts made Plaintiff pull out his dreadlocks; and that Defendant Pillion cut his hair. Plaintiff states that he is Native American and that it is against his religion and federal law to cut his hair.

Plaintiff alleges that on October 28, 2017:

> 5 European correction officers with the order of [Defendant] Dornelle (European woman) pull Plaintiff out of his cell[,] beat him . . . sprayed OC … at Plaintiff twice . . . shocked Plaintiff with handcuffs and shacials on his feet twice with the electronic control device and twice with the shield then beat Plaintiff some more in a metal shower, then stripped Plaintiff out for three days with no running water and no mattress with paper boxers and eating on a rubber tray for three days and constantly tampering with Plaintiff's outgoing mail.

He attaches several exhibits to his complaint.

The complaint also refers to the constitutional right to be free from retaliation.

As relief, Plaintiff requests monetary and punitive damages and injunctive relief in the form of being released on parole.

***Motion to amend the complaint (DN 7)***

In his motion titled "Motion of retaliation and further proof of mail being tampered with" (DN 7), which was docketed as a motion to supplement, Plaintiff asks the Court to view the attached documentation as further evidence of tampering with his mail in violation of the First Amendment. Attached is a copy of a KDOC Disciplinary Report Form which states that Lt. Mitchell, not a Defendant to this action, intercepted a letter being sent by Plaintiff to an

inmate at another facility, which he found odd, and was told by STG Coordinator James Beavers, also a non-Defendant, that the letter was in fact gang-related. Plaintiff contends in his motion that no such letter existed.

Because the date of the disciplinary report is January 24, 2018, *i.e.*, before he filed the complaint in this case, it is not a motion to supplement the complaint but rather to amend it. Under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff may amend his complaint once as a matter of right at this stage of the proceeding. Therefore, this motion (DN 7) will be granted.

***Motions to supplement the complaint (DNs 5, 6, 8, 9, 11-13, and 17)***

Many of the motions pending in this case are motions to supplement the complaint. Federal Rule of Civil Procedure 15(d) provides that a court may permit a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." While courts have broad discretion to allow a supplemental complaint to add new claims and new parties, generally, courts require some linkage between the claims asserted in the original pleading and those offered in the proposed supplemental pleading. *Diamond Elec., Inc. v. Knoebel Constr., Inc.*, No. CV 5:16-023-KKC, 2016 WL 6518625, at *2 (E.D. Ky. Nov. 2, 2016) (explaining that in considering whether to permit supplementation "courts look to the interrelation of the proposed new claims with those already pending against the defendant"). "'A court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts.'" *Id.* at *2 (quoting *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988)). In addition, leave to supplement may be denied if it would be fairer and more orderly for Plaintiff to bring his new claims in another lawsuit. *See Martinez v. Hiland*,

No. 5:13-CV-P182-GNS, 2017 WL 939009, at *2 (W.D. Ky. Mar. 9, 2017) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008)).

*DNs 5, 9, and 11-13*

The heart of the original complaint and amended complaint (DN 7) were that Defendant Dornelle wishes to harm or kill Plaintiff in retaliation for events at KSP in 2013; that Defendant Pillion conducted a random cell search and cut his hair in violation of Plaintiff's freedom of religion; that Plaintiff was subjected to excessive force on October 28, 2017, and then kept for days without running water, clothes, or a mattress; and that his mail was tampered with.

In his first motion to supplement (DN 5), Plaintiff alleges that he was not allowed to shower for two days during February 2018 because of a lock down. Plaintiff also asserts that on February 4, 2018, he asked Nurse Smith, not a named Defendant, to "please eject the Plaintiff's medicine in eye view and Nurse Smith attempt to deny the Plaintiff his blood pressure medication." These claims are not related to the claims or Defendants put forth in the complaint and amended complaint.

Plaintiff's next motion to supplement (DN 9) alleges that on March 5, 2018, at 7:00 a.m., after not having his blood pressure medicine that day or the day before, Plaintiff told Defendant Thompson that he felt dizzy, but Defendant Thompson only told Plaintiff to lie down. Plaintiff alleges that around 10:00 he passed out on his cell floor. Plaintiff alleges that non-Defendant Troy Belt led an entry team on Plaintiff due to "Plaintiff passing out." He states that other inmates yelled, "'let that Rat die!'" and "no officer moved to correct such matter." He states that at that point a nurse was called in to revive him and he was given his medicine. The allegations in this motion do not concern the allegations set forth in the complaint and amended complaint.

Plaintiff's next motion to supplement (DN 11) alleges that from March 12 to March 28, 2018, he was kept in a cell with no running water and brushed his teeth and washed his face with "sewage water." Plaintiff also alleges that on March 9, 2018, while he was still weak after having passed out, Defendant Dornelle and non-Defendant Officers O'Dale and Julian attempted to perform a cell search and O'Dale and Julian sprayed him with "O.C." multiple times while he was in bed and did not pose a threat. Plaintiff also alleges that on March 28 his clothes were taken from him by O'Dale leaving Plaintiff nude "for all staff personnel and inmates to see." He further alleges that O'Dale told him "'you hollering black lives matter . . . is bullshit." These allegations also are not sufficiently related to the events in the original and amended complaint.

Plaintiff's next motion to supplement (DN 12) concerns events occurring on May 3, 2018, wherein an unnamed corrections employee sneezed on his gloved hand and then served Plaintiff food. He states that he was not given the choice of another tray and he either had to eat the unsanitary tray or refuse to eat. He further states that he has asked all of the nurses to "eject" his medicine in front of him because he has seen nurses drop his medicine on the floor and they give it to him or touch his medicine without washing hands or wearing gloves. Finally, in that motion, Plaintiff alleges that non-Defendant B. Spurlock prevented Plaintiff from "getting further medical treatment" for his high blood pressure. However, he also states that he has been diagnosed with high blood pressure by two prison doctors and "dozen[s] of blood work has been conducted on" him. Again, these allegations concern events unrelated to the allegations in the complaint and amended complaint.

In his next motion to supplement (DN 13), Plaintiff makes allegations regarding events in late May and early June of this year. He states that non-Defendant Spurlock conducted a body search on him, and not on other inmates, for no reason. He further states that non-Defendant

5

Officer Lagrand has been harassing Plaintiff for six days, apparently by attempting to establish a "relationship" with Plaintiff. He states that Lagrand "has threatened . . . to throw the Plaintiff in segregation due to the Plaintiff refusing to engage in (a) relationship." These allegations do not concern Defendants named in or allegations made in the complaint or amended complaint.

Accordingly, because Plaintiff's motions to supplement at DNs 5, 9, and 11-13 relate at most only indirectly to the original and amended complaints and arise out of events unrelated to the original and amended complaints, they will be denied. *See Diamond Elec., Inc. v. Knoebel Constr., Inc.*, 2016 WL 6518625, at *2 (explaining that some linkage between claims in original pleading and those in the proposed supplemental pleading is required).

*DN 8*

In DN 8, which was also docketed as a motion to supplement, Plaintiff asks the Court to order that he be transferred to another facility and ban "all parties from retaliating against" him. Plaintiff contends that Defendants continue to retaliate against him with infraction notices containing "false claims" and that they threaten to harm his family if he does not withdraw his complaint. He further alleges that Defendants read his outgoing mail to his friends and family, do not send his outgoing mail to his friends and family, document Plaintiff's family's and friends' addresses, and lose documents to "cover themselves." He attaches as an exhibit a March 1, 2018, disciplinary report form which states in the description-of-incident portion that Plaintiff became argumentative when Defendant Inglish refused to give him "a letter that was found to be Gang related."

While this motion refers to Defendants and refers to retaliation and mail tampering, which are allegations in the complaint, it would be futile to grant this motion to supplement. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a motion to amend a complaint under

Rule 15(a) may be denied where the proposed amendments would be futile); *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) (observing that the standard that applies to a motion to amend under Rule 15(a) likewise applies to a motion to supplement under Rule 15(d)) (citing *McHenry v. Ford Motor Co.*, 269 F.2d 18, 24 (6th Cir. 1959)).

"Prison officials do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail." *Zink v. Cummings*, No. 2:17-CV-32, 2017 WL 2374508, at *2-3 (W.D. Mich. June 1, 2017); *see also Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999) (holding that opening and inspecting inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (holding that prison officials are justified in screening outgoing non-legal mail for escape plans, contraband, threats, or evidence of illegal activity). Therefore, Plaintiff's allegations regarding his non-legal outgoing mail do not state a constitutional claim.

The rest of the allegations in the motion are too speculative and conclusory to state a § 1983 claim. Moreover, the motion is more in the nature of a motion to request transfer than a motion to supplement the complaint. Where a plaintiff requests an "immediate" transfer, the Court construes his motion as a motion for preliminary injunction. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause

substantial harm to others; and (4) whether a preliminary injunction would be in the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006).

The likelihood of success on the merits is often the predominant consideration determining whether a preliminary injunction should issue. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Here, Plaintiff has not shown that he is likely to prevail on the merits. A prisoner has no right to be incarcerated in a particular institution or a particular part of an institution. *See Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

With regard to his allegations of retaliation and threats, Plaintiff offers only conclusory statements, with no evidentiary support, that he is being retaliated against and that there have been threats to his family. This is not sufficient for the requested preliminary relief of transfer. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (stating that proof for temporary relief "is much more stringent than the proof required to survive a summary judgment motion"). Plaintiff therefore fails to meet his burden of proof in demonstrating a strong likelihood of success on the merits.

Secondly, to demonstrate irreparable harm, a movant must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney*, 443 F.3d at 552. Plaintiff's motion does not do so, and the Court finds that Plaintiff has not demonstrated actual and imminent irreparable harm to justify the extraordinary remedy of a preliminary injunction.

The third and fourth elements also weigh against granting preliminary relief. The Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and

absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

*DN 6*

In DN 6, which was also docketed as a motion to supplement, Plaintiff asks this Court to consider the search policy and grievance process which he states that he has enclosed. However, there are no attachments to this motion. Accordingly, this motion (DN 6) will be denied.

*DN 17*

Finally, Plaintiff filed a motion (DN 17) alleging that KSP has denied Plaintiff review by the Kentucky Parole Board. He alleges that this state action "is denying . . . his due process to his freedom in society[.]" To the extent that this motion is one to supplement the complaint, it must be denied because it would be futile to do so.

For Plaintiff to state a claim based upon an alleged violation of due process, he must have a valid liberty or property interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A liberty or property interest must rise to more than "an abstract need or desire" and must also be based upon more than a "unilateral hope." *Id.* (internal quotation marks and citation omitted). No liberty or property interest exists here because a convicted person has no particular right to be paroled in Kentucky before the expiration of a valid sentence. *Perkins v. Chandler*, No. 5:12CV-P12-R, 2013 WL 1966275, at *3 (W.D. Ky. May 10, 2013); *see also Land v. Commonwealth*, 986 S.W.2d 440, 442 (Ky. 1999) ("Kentucky courts have repeatedly held that there is no constitutional right to parole, but rather parole is a matter of legislative grace or executive clemency."). Also, Plaintiff's eligibility for parole under Kentucky's discretionary parole system is not an "atypical and significant hardship" that would elevate it to a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See Perkins*, 2013 WL 1966275, at *3.

Moreover, to the extent that Plaintiff's claims implicate the fact and/or duration of his confinement, they must be brought as claims for habeas corpus relief under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973) (habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release); *see also Barnes v. Lewis*, No. 93-5698, 1993 WL 515483 (6th Cir. Dec. 10, 1993) (holding that dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement). Therefore, the Court will deny this motion.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion (DN 7) to amend the complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motions (DNs 5, 6, 8, 9, 11-13, and 17) are **DENIED**.

The Court will conduct its initial review on the original complaint (DN 1) and the amended complaint (DN 7) by separate Memorandum Opinion and Order.

Date:


cc: Plaintiff, *pro se*
4413.009