UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JOHNNY A. McDONALD                                                   PLAINTIFF

v.                                                       CIVIL ACTION NO. 5:18-CV-P93-TBR

MICHAEL SPRINGFIELD et al.                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Johnny A. McDonald filed a 42 U.S.C. § 1983 complaint (DN 1) and amended complaint (DN 7). The Court must perform an initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, some claims will be dismissed, and other claims will be allowed to continue.

**I. SUMMARY OF CLAIMS**

Plaintiff is a convicted inmate housed at the Kentucky State Penitentiary (KSP). The complaint (DN 1) names as Defendants the following KSP employees: Corrections Officers Michael Springfield, Michael Pillion, and Tammie Dornelle; Lt. Jared Thompson; Sergeant Brendan Inglish; and Warden Randy White. Plaintiff also names as a Defendant Deputy Commissioner James L. Erwin of the Kentucky Department of Corrections (KDOC). All Defendants are sued in their individual and official capacities.

Plaintiff alleges that, while housed at KSP in 2013, Defendant Dornelle and other KSP employees were overheard "plotting to 'kill' me and cover up my death like so many deaths has been done." Apparently, Plaintiff was transferred away from KSP because of that threat. However, in October 2017, Plaintiff was returned to KSP, where Defendant Dornelle still works.

Plaintiff states that he attempted to resolve the situation by talking to Defendant Dornelle, but she insisted that she would "'finish what she started.'"

Plaintiff alleges that on October 17, 2017, a random search of his cell signaled to Plaintiff that "it has begun, 'meaning they were going to try to kill him.'" He asserts that Defendant Pillion noticed Plaintiff had dreadlocks during this search; that he and non-Defendant Unit Administrator Julie Roberts made Plaintiff pull out his dreadlocks; and that Defendant Pillion cut his hair. Plaintiff states that he is Native American and that it is against his religion and federal law to cut his hair.

Plaintiff further alleges that on October 28, 2017:

> 5 European correction officers with the order of [Defendant] Dornelle (European woman) pull Plaintiff out of his cell[,] beat him . . . sprayed OC … at Plaintiff twice . . . shocked Plaintiff with handcuffs and shacials on his feet twice with the electronic control device and twice with the shield then beat Plaintiff some more in a metal shower, then stripped Plaintiff out for three days with no running water and no mattress with paper boxers and eating on a rubber tray for three days and constantly tampering with Plaintiff's outgoing mail.

The complaint also refers to the constitutional "right [to be] free from retaliation."

Plaintiff attaches several exhibits to his complaint. Among them is a disciplinary report form for an incident of October 28, 2017. That form indicates that Plaintiff was charged with eluding or resisting apprehension and was found guilty. According to that form, officers were preparing to do a random cell search of Plaintiff's cell, and Plaintiff did not comply with instructions.

> A cell entry team was formed to pull him out of the cell. He was ordered to the kneeling compliance position and when we opened the cell door he came to his door and moved towards the door. We brought him to the ground for control and he continued to resist. [Defendant Thompson] used the electronic control device to gain control. [Plaintiff] resisted and [Defendant Thompson] used the electronic control device once more. After that, [Plaintiff] became compliant.

That report indicates that Defendants Inglish and Springfield were also involved in the cell extraction. Plaintiff received a penalty of 30 days restricted housing suspended for 180 days.

Also attached is another disciplinary report form from October 28 charging Plaintiff with tampering with physical evidence. Plaintiff was found guilty and given 30 days of phone restriction.

Plaintiff also attaches a picture of him dated April 18, 2017, showing that he had dreadlocks and a copy of "3 Cellhouse Segregation Unit Operating Rules and Standards" which states that inmates "must have free flowing hair, regardless of length, Braids, corn rolls, dreadlocks, etc. are not permitted. Upon entrance into Unit you will be given 30 minutes to have your hair in compliance."

As relief, Plaintiff requests monetary and punitive damages and injunctive relief in the form of being released on parole.

In Plaintiff's amended complaint (DN 7), Plaintiff asks the Court to view attached documentation as further evidence of tampering with his mail in violation of the First Amendment. Attached is a copy of a KDOC Disciplinary Report Form dated January 24, 2018, which states that Lt. Mitchell, not a Defendant to this action, intercepted a letter being sent by Plaintiff to an inmate at another facility, which he found odd, and was told by STG Coordinator James Beavers, also a non-Defendant, that the letter was in fact gang-related. Defendant Inglish conducted the investigation into the report about the reported gang-related letter. Plaintiff contends that no such letter existed.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the

Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe pro se pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Official-capacity claims for monetary damages

Defendants are employees of the Commonwealth of Kentucky. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Therefore, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege a cognizable claim under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary

damages against state officers or employees in their official capacity. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims for monetary damages will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

### B. Defendants White and Erwin

Plaintiff makes no allegations against KSP Warden White or KDOC Deputy Commissioner Erwin. He does attach a letter from Defendant Erwin in response to a letter Plaintiff wrote to him. Defendant Erwin informed him that the issues about which Plaintiff wrote should be addressed through the grievance process.

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act' ") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Thus, for supervisors, such as Defendants White and Erwin to be held liable under § 1983, they must have had personal involvement in the alleged unconstitutional conduct.

Further, a prison official cannot be held liable under § 1983 either for denying administrative grievances or for failing to remedy alleged unconstitutional behavior, because such actions are not equivalent to "approv[ing] or knowingly acquiesc[ing] in the unconstitutional conduct," for which supervisors can be liable. *Shehee*, 199 F.3d at 300. This concept holds true even if the supervisors have actual knowledge of the alleged constitutional violation. *Id*. ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'") (citation omitted).

Plaintiff does not allege any active unconstitutional behavior by Defendants White and Erwin. Therefore, the claims against these Defendants will be dismissed.

### C. Freedom-of-religion claim

Plaintiff alleges that when Defendant Pillion noticed that Plaintiff had dreadlocks, he made Plaintiff pull out his dreadlocks and then cut his hair. Plaintiff alleges that he is Native American and that it is against his religion to cut his hair.

The Court will allow Plaintiff's First Amendment freedom-of-religion claim to go forward against Defendant Pillion in his individual capacity for all relief and in his official capacity for equitable relief.

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), offers heightened statutory protection of the freedom of religion. Plaintiff's complaint makes no mention of RLUIPA. However, other circuits have held that it is error for a district court not to consider a RLUIPA claim where a *pro se* plaintiff has alleged a constitutional freedom of religion claim. *See Smith v. Johnson*, 202 F. App'x 547, 549 (3d Cir. 2006) ("We apply the relevant law, regardless of whether the pro se litigant has identified it by name"; noting that the Second and Tenth Circuits also have remanded to the district court for a determination

under RLUIPA even where the RLUIPA was not alleged in the complaint). This Court will, therefore, consider whether Plaintiff has a claim under the RLUIPA as well.

Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Court finds that Plaintiff has stated a RLUIPA claim.

However, monetary damages under RLUIPA are not available against Defendant Pillion in either his individual or official capacity. *See Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) (holding that awarding "individual-capacity, money-damages . . . [under] RLUIPA [is] inappropriate"); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (holding that the Eleventh Amendment bars RLUIPA claims for money damages against states and state employees in their official capacities). The Court will allow Plaintiff's claim under RLUIPA to go forward against Defendant Pillion in his official capacity for equitable relief.

### D. Claim of excessive force

The Court will allow Plaintiff's claim of excessive force to go forward against Defendants Dornelle, Thompson, Inglish, and Springfield in their individual capacities for the events surrounding the October 28, 2017, cell extraction.

### E. Tampering-with-mail claim

Plaintiff's complaint refers to constant tampering with his outgoing mail. Plaintiff does not state that the mail in question was legal mail.[1]

"Prison officials do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail." *Zink v. Cummings*, No. 2:17-CV-32, 2017 WL 2374508, at *2-3 (W.D. Mich. June 1, 2017); *see also Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999) (holding that opening and inspecting inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (holding that prison officials are justified in screening outgoing non-legal mail for escape plans, contraband, threats, or evidence of illegal activity). Therefore, Plaintiff's allegations regarding his non-legal outgoing mail do not state a constitutional claim.

In his amended complaint, Plaintiff attaches documentation as evidence of tampering with his mail in violation of the First Amendment. That document, a KDOC Disciplinary Report Form dated January 24, 2018, states that a letter sent by Plaintiff to an inmate at another facility was found to be "gang-related." Plaintiff contends that no such letter existed. If no such letter existed, then obviously Plaintiff has not stated a claim regarding mail tampering with regard to this incident.

### F. Retaliation

The complaint makes a conclusory reference to Plaintiff's right to be free from retaliation. Some factual basis for each claim must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The Court is not required to accept conclusory and unsupported statements. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th

---

[1] Plaintiff filed multiple motions to supplement the complaint in this case, which have been denied. Those motions referred to prison officials reading his outgoing mail to family and friends, bolstering this Court's conclusion that Plaintiff is not referring to legal mail.

Cir. 2001). Because Plaintiff pleads a legal conclusion without surrounding facts to support the conclusion stated in this claim, he fails to state a claim. *Grinter*, 532 F.3d at 577.

Plaintiff also alleges that, with regard to his claim regarding the "gang-related" letter, Defendant Inglish lied in the report of the investigation, presumably by stating that he (Inglish) "ended the interview due to Inmate McDonald's behavior." Plaintiff asserts that it was he who ended "the investigation due to the fact there is no such letter with no such odd writing." To the extent that Plaintiff alleges that he was falsely accused of sending a gang-related letter as retaliation, this claim fails. To succeed on a First Amendment retaliation claim, Plaintiff must show that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018). Here, Plaintiff does not allege that he was engaged in protected conduct or that any adverse action was motivated at least in part by protected conduct. Therefore, even assuming he has alleged adverse action, Plaintiff fails to state a retaliation claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against Defendants in their official capacities for monetary damages are **DISMISSED** for failure to state a claim and for seeking relief from Defendants immune from such relief pursuant to 28 U.S.C. § 1915A(b)(1), (2).

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants White and Erwin and his claims regarding mail-tampering and retaliation are **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk of Court is **DIRECTED** to terminate Defendants Warden Randy White and Deputy Commissioner James L. Erwin as parties to this action.

The Court will allow Plaintiff's First Amendment claim against Defendant Pillion in his individual capacity for all relief and in his official capacity for equitable relief and under RLUIPA in his official capacity for injunctive relief to go forward; and will allow his excessive-force claims against Defendants Dornelle, Thompson, Inglish, and Springfield in their individual capacities to go forward. In doing so, the Court expresses no opinion on the ultimate outcome of those claims.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the development of the ongoing claims.

Date:

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009